UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff(s),

                          Case No.  20-cr-20430

vs.

                          HON. GERSHWIN A. DRAIN

D-1 RAAD KOUZA,
D-2 RAMIS KOUZA,

           Defendant(s).

## ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S OMNIBUS MOTION IN LIMINE [#48] AND GRANTING DEFENDANTS' JOINT MOTION IN LIMINE FOR SUPPLEMENTAL DISCLOSURE [#49]

## I.   INTRODUCTION

This matter is scheduled to commence a jury trial on October 22, 2024.  Presently before the Court is the Government's Omnibus Motion in Limine, filed on May 6, 2024.  The Defendants filed a Joint Response on May 17, 2024.  Also, before the Court is the Defendants' Joint Motion in Limine for Supplemental Rule 16 Disclosures Regarding Government Expert Richard Ruffing, or in the Alternative, for the Testimony to be Excluded, filed on May 13, 2024.  The Government filed a Response on May 17, 2024.  The Defendants filed a Reply on June 16, 2024.  A

hearing on these matters was held on June 24, 2024.  For the reasons

that follow, the Court grants in part and denies in part the

Government's Omnibus Motion in Limine, and grants Defendants' Joint

Motion in Limine for Supplemental Disclosures.

## II.   FACTUAL BACKGROUND

On September 16, 2020, Raad Kouza and Ramis Kouza were

charged by Indictment with conspiracy to commit health care fraud and

wire fraud, in violation of 18 U.S.C. § 1349, related to their purported

scheme to submit fraudulent claims to Medicare, Medicaid, and Blue

Cross Blue Shield of Michigan (BCBSM) through ER Drugs, Food Town

and Seaway pharmacies for prescription medications that the

pharmacies lacked the inventory to dispense.  In addition, the

Indictment charges Raad Kouza with six counts of health care fraud, in

violation of 18 U.S.C. § 1347, related to specific fraudulent claims that

Raad Kouza allegedly caused to be submitted through the charged

pharmacies.  In total, between 2010 and 2019, the Indictment charges

that the Defendants submitted and caused to be submitted

approximately $7.4 million in false and fraudulent claims to Medicare,

Medicaid and BCBSM.

## III.   LAW & ANALYSIS

### A. Standard of Review

A motion in limine is a tool used to prevent evidence "that clearly ought not to be presented to the jury" from reaching the jury.  *Jonasson v. Lutheran Child and Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997). Evidence is generally admissible if it is relevant and not unfairly prejudicial.  *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

Rules 401 and 402 of the Federal Rules of Evidence permit the admission of only relevant evidence.  Evidence that is irrelevant is inadmissible.  *See* Fed. R. Evid. 402.  Evidence is relevant if it has any tendency to make the existence of a material fact more or less probable than it would be without the evidence.  *See* Fed. R. Evid. 401.  Rule 403 prohibits the admission of relevant evidence where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence. *See* Fed. R. Evid. 403.

## B. Government's Omnibus Motion in Limine

### 1. Legitimate Medical Billings, Legitimate Prescriptions or Other Good Conduct

The Government first argues that Defendants should be precluded from arguing or presenting evidence of (1) legitimate billing or prescriptions by Defendants; and (2) the provision of legitimate services by Defendants at the pharmacies with which they were affiliated.

Defendants respond that they do not know if they will seek to show evidence of legitimate billings to Medicare, Medicaid and BCBSM, however Defendants claim that such evidence is relevant to their defense of negligence. They argue that it is critical to their defense to be able to question Government witnesses about areas of legitimate billing and legitimately dispensed medications in order to explore this aspect of their defense. Defendants also claim such evidence will assist the jury in determining the relevant percentage of legitimate billing versus illegitimate billing. Defendants claim there is a known error rate within the realm of pharmacy billing, and mere negligence is not a criminal act.

The Sixth Circuit has repeatedly held that evidence that a

defendant engaged in legal, honest conduct some of the time has no bearing on whether the defendant engaged in, or had knowledge of, fraudulent conduct charged by the government.  *See United States v. Dimora*, 750 F.3d 619, 630 (6th Cir. 2014)("For the same reasons that prior 'bad acts' may not be used to show predisposition to commit crimes, prior 'good acts' generally may not be used to show a predisposition not to commit crimes."); *see also United States v. Ellisor*, 522 F.3d 1255, 1270 (11th Cir. 2008) (affirming district court's ruling precluding the defendant from offering evidence of legitimate business activities because "evidence of good conduct is not admissible to negate fraudulent intent."); *United States v. Marrero*, 904 F.2d 251, 260 (5th Cir. 1990) (excluding defendant psychologist from offering evidence of legitimate billings in false claims act case because it was irrelevant that the defendant "did not overcharge in every instance in which she had the opportunity to do so"); *United States v. Scarpa*, 897 F.2d 63, 70(2d Cir. 1990)("A defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions."); *United States v. Winograd*, 656 F.2d 279, 284 (7th Cir. 1981)(finding defendant's performance of some legal trades irrelevant to his

knowledge of illegal trades).

Here, Defendants have provided no authority for their position that evidence of legitimate billings is relevant to the question of whether Defendant's willfully submitted fraudulent claims to Medicare, Medicaid and BCBSM. As such, the Court will grant this aspect of the Government's present motion and will exclude evidence of Defendants' legitimate billings and legitimate services at the pharmacies with which they were affiliated.

### 2. Victims' Negligence

Next, the Government argues that Defendants should be precluded from arguing that, because Medicaid, Medicare, and BCBSM failed to detect the fraud and paid claims for prescription drugs, thus Defendants could not have known their scheme was illegal.

Defendants counter that they do not intend to argue that the negligence of Medicare, Medicaid, and BCBSM caused them to commit fraud. They also do not intend to argue that the failure of these entities to identify or detect their billing practices as fraudulent absolves them of criminal liability. However, Defendants assert they have a right to question the methodology used with respect to flagging of purported

6

fraudulent activity.  The jury will need to understand the mechanism behind billing and reimbursement practices of Medicare, Medicaid, and BCBSM.  Defendants claim they need to explore this evidence so the jury can determine whether Defendants' practices were reasonable and/or fell within an industry standard.  Thus, Defendants maintain if the Court is inclined to grant the Government's motion, it should be narrowly construed to prohibit only the argument that the negligence of these entities to discover the so-called fraud absolves Defendants of any criminal culpability.

Even where a "victim is also guilty of negligence," the perpetrator is "no less guilty of fraud" because of such negligence.  *United States v. Svete*, 556 F.3d 1157, 1165 (11th Cir. 2009).  The Court will preclude the Defendants from advancing any contributory negligence theories in support of their defense.  Nor may Defendants argue that the failure of these entities to detect the fraud absolves the Defendants of criminal liability.  This aspect of the Government's present motion will be granted.

### 3. Other Persons

The Government also argues that Defendant should be prohibited

from presenting evidence that other individuals or entities could have been charged in a like manner as the Defendants.  The Government maintains that the identity and number of individuals charged in connection with Defendants' purported fraudulent scheme, the reasons behind the Government's charging decisions, and the comparative culpability of Defendants versus others involved in the conspiracy are all irrelevant and unfairly prejudicial subjects that should not be aired before the jury.

Defendants counter that the Government fails to account for an individual's bias.  They argue that the Government intends to introduce witness testimony from witnesses who worked with Defendants in order to show that Defendants ordered them to commit acts of fraud. Defendants assert that it is necessary to question these witnesses about their potential motive for testifying.  Defendants maintain that asking a witness about a plea deal or immunity agreement that he or she entered into with the Government is highly relevant cross-examination material. They argue they are entitled to make inquiries for purposes of uncovering any other "prejudices, or ulterior motives" from which "jurors . . . could appropriately draw inferences relating to their

reliability of the witness." *Davis v. Alaska*, 415 U.S. 308, 316-18 (1974).

Based on the foregoing considerations, the Court denies this aspect of the Government's motion in limine. The Defendants are permitted to question witnesses about potential bias, including plea and immunity deals.

### 4. Witnesses

The Government next asserts that it may elect not to call every witness on its list. Thus, the Government argues that the Defendants should not be permitted to discuss the contents of the Government's witness list in front of the jury.

Defendants counter that the Government's motion is overbroad. The Government has not identified any particular witness who it is concerned about, thus this request is premature. Defendants assert that it is well established that a Defendant may comment on the Government's failure to call a witness "if they are peculiarly within [its] power to produce" and "their testimony would 'elucidate the transaction.'" *United States v. Blakemore*, 489 F.2d 193, 195 (6th Cir. 1973).

Based on the foregoing, this aspect of the Government's motion

will be denied without prejudice.

### 5. Discovery Disputes

The Government also argues that the Defendants should be barred from raising any discovery disputes or issues before the jury. Defendants do not generally dispute this motion; however, they argue that this motion is premature.  Because it is unknown at this juncture what evidence or testimony the Government may introduce at trial, the Defendants should be able to determine through questioning whether the Government has complied with its discovery obligations.  For example, Defendants argue they should not be barred from entering a line of questioning that elicits information about statements or reports that were reduced to writing and not produced.

Based on the foregoing, the Court grants this aspect of the Government's motion.  Defendants have failed to provide any authority for their position that they should be able to question witnesses about discovery production.

### 6. Evidence of a Civil Action Involving Government Witness Michael Pemberton

The Government intends to call Special Agent Michael Pemberton

to testify as a witness at trial.  On February 27, 2022, an amended civil complaint was filed in an unrelated matter before this Court, in which Pemberton was named as a defendant.  *See* Case No. 22-cv-10424.  The amended complaint alleges that Pemberton and seven other individual co-defendants engaged in misconduct in their investigation into Plaintiff Mohamad Ali Makki.  The defendants in that matter filed a motion to dismiss on July 15, 2022, and the court granted their motion and entered judgment in the defendants' favor.

The Government asserts that any testimony related to this civil action is prohibited under Federal Rules of Evidence 403, 404, and 608 because this evidence is neither material nor relevant to the matter before the Court.  The Defendants' counsel agree that evidence of an unrelated lawsuit is irrelevant to the issues in this case.  Therefore, the Court will grant this aspect of the Government's present motion.

### 7. Jury Nullification

The Government also argues that the Defendants should be precluded from arguing or seeking to admit evidence for the purpose of encouraging the jury to nullify its verdict.  The Defendants' counsel agrees and will not argue that the jury should nullify its verdict.  As

11

such, this aspect of the Government's present motion is also granted.

## 8. Plea Negotiations

Next, the Government argues the substance of plea negotiations, plea offers, or Defendants' rejection of a plea offer is irrelevant and should not be presented to the jury. Defendant agrees plea negotiations and offers are not relevant to the issues in this case. Accordingly, this aspect of the Government's present motion will be granted.

## 9. Potential Punishment

The Government also argues that references to possible punishment of Defendants or any of the collateral consequences of conviction, including incarceration, loss of livelihood, and loss of professional licenses would be an impermissible appeal to the jury's sympathy and are irrelevant. The Defendants' counsel agrees any reference to potential punishment or collateral consequences of conviction are irrelevant. Accordingly, the Government's motion will be granted with respect to arguments concerning possible punishment.

### 10.   Personal Opinions and Relationships with Defendants

The Government argues that defense counsel's personal opinion of, or relationship with, Defendants is irrelevant and would constitute impermissible testimony on behalf of counsel unless defense counsel takes the stand as a witness.  The Defendants' counsel agrees that their personal opinions about, and relationship with, the Defendants is irrelevant to issues in this case.  Accordingly, this aspect of the Government's present motion will be granted.

### C.  Defendants' Joint Motion in Limine for Supplemental Rule 16 Disclosures Regarding Government Witness Richard Ruffing or in the Alternative for the Testimony to be Excluded

The Government intends to call Richard Ruffing, a director at Stout, to testify as a factual summary witness in this matter.  The Defendants argue that Mr. Ruffing is an expert witness under Rule 702 and obligated to disclose the underlying bases and reasons for his opinions and conclusions.

On December 21, 2023, the Government provided the defense with its "Notice of Stout Expert Witness Disclosure."  In the Notice, the Government proffered Richard Ruffing as someone who would testify

regarding the flow of funds from Medicare, Medicaid, and private insurance to ER Drugs, Food Town, Seaway, St. Paul, and Rockwood Pharmacies ("the Pharmacies") and then from the Pharmacies out to bank accounts associated with the defendants and their associates. Mr. Ruffing explained that he would "offer statements or opinions regarding," 1) "the scheduling of inflows into the Pharmacies' various accounts," 2) "The scheduling of outflows from the Pharmacies' accounts," 3) "the scheduling of inflows and outflows to and from the defendants' accounts and the accounts of other associates and entities," 4) summaries of the authorized signatures on the accounts reviewed, including the accounts of the Pharmacies, the defendants, and other associates and entities." However, Ruffing's disclosure did not includes these schedules of inflows and outflows, or anything about authorized signatures.

Mr. Ruffing's disclosure further described that he would testify about the methodologies by which he isolated relevant incoming funds representing payments to the pharmacies; isolated relevant outflows of those payments to related entities, Defendants, or their associates; and isolated inflows and outflows to and from the defendants' accounts and

the accounts of other associates and entities.  However, Mr. Ruffing's disclosure did not describe the methodologies that he used and would testify about.  Mr. Ruffing's disclosure further described that these methodologies included creating spreadsheets of "relevant information . . . associated with each transaction in excess of the applicable threshold" within each pharmacy's bank account and within the accounts of each defendant and their associates or related entities. Again, Mr. Ruffing's disclosure failed to include these spreadsheets, or a description of what "the applicable threshold" for the respective bank accounts means, or a description for each account of what was in fact "in excess of the applicable threshold."

On December 29, 2023, Defendants notified the Government that Mr. Ruffing's disclosures did not meet the requirements of Rule 16(a)(1)(g)(iii).  On January 12 and January 15, 2024, the Government advised the Defendants that it did not view Mr. Ruffing to be an expert witness within the meaning of FRE 702, and only provided his disclosure "out of an abundance of caution." Instead, the Government characterized Mr. Ruffing as a summary witness in accordance with the topics outlined in his December 21, 2023 notice.

15

On May 6, 2024, the Government supplied the summary exhibit that Mr. Ruffing will testify about.  This is the only information defense counsel has received about Mr. Ruffing's anticipated testimony since his December 21, 2023 notice.   The 27-page summary exhibit purports to summarize inflows into and out of the bank accounts of (1) "the [five] Pharmacies," (2) the Defendants, (3) a category called "Kouza Pharmacies," and (4) a category called "Kouza-Controlled Entities."  As such, it appears that Mr. Ruffing summarizes bank account activity of least 23 different bank accounts.

According to the Government, Mr. Ruffing's testimony will cover the following areas:  (1)  a brief summary of his background and experience, (2) his review of voluminous bank records at issue in this case, and (3)  a summary exhibit under Federal Rule of Evidence 1006 reflecting the inflows and outflows of bank accounts associated with the five pharmacies owned and controlled by the Defendants.  Mr. Ruffing will testify regarding the funds received by the Kouza pharmacies from pharmacy benefit managers ("PBMs")  and the funds dispensed by bank accounts associated with each of the Kouza pharmacies to other accounts held or controlled by either or both of the Defendants.

The Government claims that Mr. Ruffing's testimony is only factual in nature.  He will not be providing any expert opinion regarding whether the banking activity of the accounts he reviewed is consistent with fraud, and he will not be explaining any advanced methodology to the jury.  The Government maintains that Mr. Ruffing's testimony reflects his review and summary of voluminous financial records, and the function of basic addition and subtraction as he summarized the inflows and outflows of the bank accounts for the Kouza pharmacies.

Federal Rule of Evidence 1006 provides that a "proponent may use a summary, chart, or calculation to prove the content of voluminous writings . . . that cannot be conveniently examined in court."  Fed. R. Evid. 1006.  The decision whether to admit a summary under Rule 1006 is committed to the sound discretion of the trial court.  *United States v. Moon*, 513 F.3d 527, 545 (6th Cir. 2008).  A Rule 1006 summary is offered and admitted in lieu of the underlying evidence.

To establish the admissibility of a Rule 1006 summary, the proponent has the burden of establishing each of the following factors:

> (1)the underlying documents are so voluminous that they cannot be conveniently examined in court; (2) the

underlying documents have been made available for
examining or copying at a reasonable time and place; (3)
the underlying documents are admissible into evidence;
(4) the summary is accurate and nonprejudicial; and (5)
the summary can be properly introduced through the
testimony of a witness who supervised its preparation.

*United States v. Stone*, 852 F. Supp. 2d 820, 828 (E.D. Mich. 2012)

(citing *United States v. Moon*, 513 F.3d at 545).

Here, while Mr. Ruffing is an expert in accounting and a
certified fraud examiner, his trial testimony will not provide any
expert opinions concerning whether the transactions at issue were
fraudulent in nature.  Mr. Ruffing summarized bank statements,
checks and signatory cards associated with the bank accounts
identified by the Summary.

However, the interests of justice require that the
Government provide more detail in order for the defense to vet the
accuracy of the summary chart.  This includes a description of the
underlying methodology used to create the summary chart, as well
as an itemization of the transactions used in his calculations.
While courts have allowed this "flow of funds" analysis to be
admitted under Rule 1006, the courts that have allowed such
evidence have relied on the fact that the defendants had sufficient

data to vet the accuracy of the summary chart.  *See United States v. Blakstad*, No. 21-2859, 2023 U.S. App. LEXIS 7408 (2d Cir. Mar. 29, 2023).

In *Blakstad*, the Second Circuit upheld the district court's decision to admit summary testimony from a government witness over the defendant's objection that the testimony should have been classified as expert testimony.  2023 U.S. App. LEXIS 7408, *6-8.  In affirming the district court, the *Blakstad* court noted that the summary witness's testimony was based on the LIFO method, which the Government instructed him to use.  *Id*.  The witness "merely applied the methodology selected by the government and did not present expert testimony endorsing the LIFO methodology."  *Id*. at *8.

Contrary to the Government's position, this information is not work product.  The Government relies on *United States v. Armstrong*, 517 U.S. 456 (1996) in support of its argument.  However, *Armstrong* is a case about discovery under Rule 16 of the Federal Rules of Criminal Procedure.

Here, the defense is not asking for the Government's work

product.  Rather, it is asking for the mechanics of how Mr. Ruffing created the proffered summary exhibit—what deposits, withdrawals and other transfers were identified for inclusion in the summary exhibit.  Without this information, the defense is unable to confirm whether the summary exhibit is accurate because it cannot reverse engineer a summary exhibit based on the raw data of bank account records without knowing what deposits, withdrawals, and other transactions within those transactions Mr. Ruffing included.

The Government has not met its burden establishing Mr. Ruffing's methodology and an itemization of the transactions used for his summary chart is work product consisting of attorney research and thought processes.  At the hearing, the Government merely argued that "there could be notes" in Mr. Ruffing's work product.  This is insufficient to show these materials are privileged attorney work product.

Additionally, the Court notes that a limiting instruction will be required so that the jury is fully aware of the fact that even though Mr. Ruffing is an accountant and fraud examiner, he is not

offering expert opinion in this matter.

## IV.   CONCLUSION

Accordingly, for the reasons articulated above, it is recommended that the Court GRANT IN PART and DENY IN PART the Government's Omnibus Motion in Limine [#48].

Defendants' Motion for Supplemental Disclosures [#49] is GRANTED.

The Government shall supplement its Disclosure with the following information:   (1) an explanation of the underlying methodology used by Mr. Ruffing to create the summary exhibit, and (2) an itemization of the transactions used in his calculations.  The amended disclosure shall be provided to defense counsel <u>no later than July 15, 2024</u>.

SO ORDERED.

Dated:  June 28, 2024                    /s/Gershwin A. Drain
                                        GERSHWIN A. DRAIN
                                        United States District Judge

## CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
June 28, 2024, by electronic and/or ordinary mail.
<u>/s/ Marlena Williams</u>
Case Manager